## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | |
|---|---|
| **JOHN DOE #12,** | |
| **Plaintiff,** | |
| ***vs.*** | |
| **WILLIAM B. LEE, Governor of the State of Tennessee, and DAVID B. RAUSCH, Director of the Tennessee Bureau of Investigation, in their official capacities,** | **Case No.** |
| **Defendants.** | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff John Doe #12[1] ("Plaintiff") hereby complains against Defendants William B. Lee and David B. Rausch as follows:

### INTRODUCTION

1. Article I, section 10, clause 1 of the United States Constitution (the "Ex Post Facto Clause") provides in relevant part: "No State shall…pass any…*ex post facto* Law[.]" The Ex Post Facto Clause prohibits laws that impose retroactive punishment. A law imposes punishment if, on the face of the statute, it is punitive in intent or punitive in effect.

2. Plaintiff is a Tennessee resident who must comply with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 for the rest of his life. *See* Tenn. Code Ann. §§ 40-39-201–40-39-218 (West 2022) ("SORA").

---

[1] Plaintiff is filing a motion for leave to proceed under a pseudonym. Plaintiff proposes to use the pseudonym "Doe #12" to prevent confusion with the numerous other "John Doe" sex of-fender registry challenges pending in this Court.

3. Plaintiff was convicted of committing a sex offense that occurred before SORA took effect in 2004 and before Tennessee's first sex offender registry law took effect in 1995.

4. SORA imposes onerous restrictions on Plaintiff that burden his liberty in every aspect of his life. Plaintiff must report in person every calendar quarter and must report on 48 hours' notice for certain other reasons. Pursuant to SORA, the state of Tennessee publicly and falsely identifies Plaintiff as "violent" and an "offender against children." Plaintiff may not live, work, stand, "sit idly," or remain in vast areas of the state of Tennessee, especially within its cities and towns. Plaintiff cannot attend his minor relative's school functions and cannot attend public sporting events at schools. Plaintiff must comply with these restrictions and obligations for the rest of his life. Any failure to comply is a felony punishable by a mandatory minimum prison term.

5. Individually and in combination, SORA's requirements and limitations are punitive in effect on the face of the statute and therefore constitute an unconstitutional *ex post facto* law as applied to Plaintiff.

6. Plaintiff seeks declaratory and injunctive relief barring SORA's application to Plaintiff.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343 (West 2022) because Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 (West 2022) for the violation of his rights under the United States Constitution.

8. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202 (West 2022), by Fed. R. Civ. P. 57 and 65 (West 2022), and by the legal and equitable powers of this Court.

9. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b) (West 2022).

## PARTIES

### *Plaintiff*

10. Plaintiff is an individual who resides in Tennessee and is required to comply with SORA.

### *Defendant Lee*

11. Defendant William B. Lee is the Governor of the State of Tennessee and resides in the Middle District of Tennessee. He is sued in his official capacity.

12. Pursuant to Article III, section 1 of the Tennessee Constitution, the supreme executive power of the state is vested in the governor. The Tennessee Constitution further provides that the governor shall take care that applicable federal and state laws are faithfully executed. Tenn. Const., art. III, § 10 (West 2022). The governor is ultimately responsible for the enforcement of the laws of this state, including SORA, and for supervision of all state departments, including the Tennessee Bureau of Investigation (the "TBI"), which maintains the sex offender registry created by SORA.

13. Governor Lee is an appropriate defendant in a case challenging the constitutionality of SORA.

### *Defendant Rausch*

14. Defendant David B. Rausch is the Director of the TBI and resides in the Middle District of Tennessee. He is sued in his official capacity.

15. SORA requires the TBI to maintain Tennessee's sex offender registry. Tenn. Code Ann. § 40-39-204(a) & (d), § 40-39-206(a) (West 2022). The TBI's responsibilities include enforcing SORA, maintaining the state's database of sex offenders, maintaining an Internet-accessible public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily-required notices to registrants, collecting registration

fees, and coordinating with national law enforcement and the national sex offender registry. *See* Tenn. Code Ann. § 40-39-203(i), § 40-39-204(a) & (d), § 40-39-205(a) & (f), § 40-39-206 (West 2022).

16. The director of the TBI is an appropriate defendant in a case challenging the constitutionality of SORA.

## FACTS

### A. Tennessee's Sex Offender Registry Law

17. Tennessee's first sex offender registry law was enacted May 10, 1994, and took effect January 1, 1995. 1994 Tenn. Pub. Laws, ch. 976, § 11 (West).

18. After multiple amendments, the original sex offender registry law was ultimately replaced by SORA, effective August 1, 2004. 2004 Tenn. Pub. Acts, ch. 921, § 6 (West).

### B. Plaintiff's Offense and Conviction

19. In 1994, Plaintiff was charged with four sexual offenses against his step-daughter, who was a minor under the age of 12, including aggravated rape.

20. Although Plaintiff maintained his innocence, in 1995 he entered an *Alford* plea to a lesser included charge of attempted aggravated sexual battery in exchange for dismissal of the other three counts. The date of the alleged offense was February 1994.

21. When Plaintiff entered his plea, he was unaware of Tennessee's sex offender registry law, which came into effect after the date of his offense. He first heard about the law from his probation officer during his initial reporting.

22. Plaintiff was sentenced to three years' imprisonment, suspended to three years' probation, and completed his sentence without incident in 1998.

23. Since completing his sentence, Plaintiff has led a productive, law-abiding life. Plaintiff is a permanently and totally disabled combat veteran. Plaintiff has no other criminal convictions. He earned a master's degree following his conviction. He remained gainfully employed, despite being fired from one job after his sex offender registry status became public, until his retirement.

### C.  Reporting Obligations

24. SORA classifies offenders as "sexual offenders," "violent sexual offenders," and "violent juvenile sexual offenders." Tenn. Code Ann. § 40-39-202(9) (West 2022). If an offender's victim was 12 years old or less, SORA additionally classifies the offender as an "offender against children." Tenn. Code Ann. § 40-39-202(10) (West 2022). An offender's classification determines the length of time that a person must register and the frequency of reporting. *See id.* §§ 40-39-204, 40-39-207(g) (West 2022).

25. Offenders convicted of more than one sex offense, violent sexual offenders, and offenders against children must register and comply with all obligations imposed by SORA for life. With certain exceptions, all other offenders must register and comply for at least ten years. *See* Tenn. Code Ann. § 40-39-207(a), (c) & (g) (West 2022).

26. An offender's classification is based solely on the offense of conviction. Tenn. Code Ann. § 40-39-202(19), (20), (30) & (31) (West 2022).

27. An offender's classification is not based on, and does not correspond to, an individualized assessment of the offender's actual risk of re-offending or the danger the offender poses to the public.

28. SORA defines Plaintiff's sex offense as a "violent sexual offense" and defines Plaintiff as an "offender against children." Tenn. Code Ann. § 40-39-202(9), (10), & (31) (West 2022). Plaintiff is therefore required to register and report as a "violent sexual offender" for life, Tenn.

Code Ann. § 40-39-207(g)(2)(B) (West 2022), and is labeled in the public sex offender registry as an "offender against children" and "violent against children," Tenn. Code Ann. § 40-39-206.

29. Even upon the clearest proof that Plaintiff is not dangerous, there is no mechanism under SORA that would allow Plaintiff to have his registration obligations eliminated or reduced.

30. As a "violent sexual offender," Plaintiff must report in person every March, June, September, and December, Tenn. Code Ann. § 40-39-204(b)(1) (West 2022), pay an annual fee of $150, and provide or update the following information:

(a) Plaintiff's complete name and all aliases;

(b) Plaintiff's date and place of birth;

(c) Plaintiff's social security number;

(d) A photocopy of Plaintiff's driver license;

(e) Sexual offenses or violent sexual offenses for which Plaintiff has been convicted, the date of the offenses, and the county and state of each conviction;

(f) Name of any of Plaintiff's current employers and length of employment, including physical addresses and phone numbers;

(g) Plaintiff's current physical address and length of residence at that address, including any primary or secondary residences;

(h) Plaintiff's mailing address, if different from Plaintiff's physical address;

(i) Any vehicle, mobile home, trailer, or manufactured home used or owned by Plaintiff, including descriptions, vehicle information numbers, and license tag numbers;

(j) Any vessel, live-aboard vessel, or houseboat used by Plaintiff, including the name of the vessel, description, and all identifying numbers;

(k) Name and address of each institution of higher education in this state where Plaintiff is employed or practices a vocation or is a student;

(l) Plaintiff's race and gender;

(m)Name, address, and phone number of Plaintiff's closest living relative;

(n) Whether victims in the underlying offenses were minors or adults, the number of victims, and the correct age of the victim or victims and of Plaintiff at the time of the offense or offenses, if the ages are known;

(o) Verification by the TBI or Plaintiff that the TBI has received Plaintiff's DNA sample;

(p) A complete listing of Plaintiff's electronic mail address information, including usernames, any social media accounts Plaintiff uses or intends to use, instant message accounts, other Internet communication platforms or devices, and Plaintiff's username, screen name, or other method by which Plaintiff accesses these accounts or websites;

(q) Whether any minors reside in Plaintiff's primary or secondary residences;

(r) Any other registration, verification, and tracking information, including fingerprints and a current photograph of Plaintiff, his vehicles, and his vessels, required by TBI rules;

(s) Copy of Plaintiff's passport; and

(t) Professional licensing information that authorizes Plaintiff to engage in an occupation or carry out a trade or business.

Tenn. Code Ann. § 40-39-203(i) (West 2022).

31. SORA requires Plaintiff to provide a "current" photograph, Tenn. Code Ann. § 40-39-203(i)(19) (West 2022), which means if Plaintiff's appearance changes, he must update the photograph within 48 hours. *Id.* § 40-39-203(a)(4).

32. In addition to reporting in person at regular intervals, Plaintiff must report in person within 48 hours if any of the information above changes. Tenn. Code Ann. § 40-39-203(a)(4) (West 2022). For example, Plaintiff must report in person within 48 hours if he changes his address, job, or e-mail address, opens a Facebook account, buys or begins using a vehicle, or stops using a vehicle.

33. There are no "good cause" exceptions to the reporting requirements or to the 48-hour notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, Plaintiff must report in person within 48 hours or face criminal charges.

34. Until 2007, SORA made sex offender registrations confidential for offenses that occurred before July 1, 1997. *See* 2004 Tenn. Pub. Ch. 921, enacting Tenn. Code Ann. § 40-39-206(c) (West). In 2007, the legislature amended SORA to make all registrations public information. 2007 Tenn. Pub. Ch. 531 at § 1 (West). Plaintiff's registration status became public that year.

### D. *Housing*

35. SORA burdens Plaintiff's access to housing. SORA bars Plaintiff from "residing" within 1,000 feet of any "public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public," making a substantial amount of housing unavailable as a matter of law. Tenn. Code Ann. § 40-39-211(a)(1) (West 2022).

36. Plaintiff would like to move from his current residence but cannot find suitable accommodations because SORA's geographical restrictions limit his housing options. The practice of

many landlords of checking the sex offender registry and refusing to lease to registrants further restricts his housing options.

### E. Employment

37. SORA burdens Plaintiff's ability to work. SORA bars Plaintiff from working within 1,000 feet of any "public school, private or parochial school, licensed day care center, other child-care facility, public park, playground, recreation center or public athletic field available for use by the general public," making a substantial number of employments unavailable as a matter of law. Tenn. Code Ann. § 40-39-211(a)(1) (West 2022).

38. When Plaintiff's sex offender registration became public information in 2007, his employer terminated his employment, claiming his office was within 1,000 feet of a primary and secondary school.

### F. Family Relationships

39. SORA burdens Plaintiff's ability to maintain family relationships. Plaintiff cannot "[b]e upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when the offender has reason to believe children under eighteen (18) years of age are present." Tenn. Code Ann. § 40-39-211(d)(1)(A) (West 2022).

40. As a result, Plaintiff could not attend his nephew's high school graduation because the graduation took place on school grounds.

## G. *Educational Opportunities*

41. SORA makes it more difficult for Plaintiff to get an education. Plaintiff's sex offender registration must include the name and address of each institution of higher education where Plaintiff is a student, Tenn. Code Ann. § 40-39-203(i)(12) (West 2022), and the TBI must provide Plaintiff's registration information to any school in which Plaintiff becomes a student, *id.* § 40-39-214(a)(2). This means Plaintiff is automatically stigmatized if he seeks an education.

## H. *Travel*

42. SORA burdens Plaintiff's ability to travel. Plaintiff must provide at least twenty-one days' advance notice before traveling out of the country. Tenn. Code Ann. § 40-39-204(h) (West 2022). SORA allows overseas travel on twenty-four hours' notice in just two cases: (a) registrants who travel out of the country frequently "for work or other legitimate purpose" and who have "the written approval of the designated law enforcement agency"; and (b) registrants who travel overseas for "emergency situations." *Id.* Since the law does not define what constitutes an "emergency," whether he can leave the country on less than twenty-one days' notice is subject to the arbitrary determination of law enforcement officials.

43. In addition, Plaintiff must plan his travel so that he is able to register in person quarterly, as required by SORA. Tenn. Code Ann. § 40-39-204(b) (West 2022).

44. The "International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders," Pub. Law No. 114–119, 130 Sta. 15 (West), generally authorizes the federal government to give "advance notice" to a foreign country when a registered sex offender is traveling to that country, *id.* § 4(e)(3), and makes it a federal crime for a registered sex offender to fail to report information on intended international

travel, *id.* § 6(a). The law also requires that passports issued to persons registered as sex offenders have a "unique identifier" indicating their status. *Id.* § 8.

45. Plaintiff cannot know whether a country receiving advance notice will prohibit Plaintiff's entry. Thus, the requirement under Tennessee law that Plaintiff register as a sex offender burdens his ability to travel anywhere else in the world and also exposes Plaintiff to extra scrutiny by United States immigration officials when he returns to the country.

## *I. Speech*

46. SORA burdens Plaintiff's ability to speak freely. Plaintiff not only must provide law enforcement with all electronic mail addresses, instant message addresses, log-in names, or other identifiers that are assigned to or routinely used by him, Tenn. Code Ann. § 40-39-203(i)(17) (West 2022), but must also report within three days whenever he establishes any electronic mail address, instant message address, or other designation used in Internet communications or postings, *id*. § 40-39-203(a)(7).

47. SORA expressly authorizes monitoring offenders' internet use:

Registry information regarding all registered offender's electronic mail address information, any instant message, chat or other Internet communication name or identity information may be electronically transmitted by the TBI to a business or organization that offers electronic communication or remote computing services for the purpose of prescreening users or for comparison with information held by the requesting business or organization. **In order to obtain the information from the TBI, the requesting business or organization that offers electronic communication or remote computing services shall agree to notify the TBI forthwith when a comparison indicates that any such registered sex offender's electronic mail address information, any instant message, chat or other Internet communication name or identity information is being used on their system.** The requesting business or organization shall also agree that the information will not be further disseminated.

Tenn. Code Ann. § 40-39-203(m) (West 2022) (emphasis added).

48. Under SORA, Plaintiff cannot engage in anonymous political speech on the Internet because Plaintiff must report the e-mail address or other username he uses on any site such as

Change.org or Whitehouse.gov. The United States Supreme Court has held that anonymous polit-

ical speech exemplifies the purpose of the First Amendment:

> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent prac-
> tice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the
> tyranny of the majority. *See generally* J. Mill, *On Liberty and Considerations on Repre-*
> *sentative Government* 1, 3–4 (R. McCallum ed. 1947). It thus exemplifies the purpose be-
> hind the Bill of Rights, and of the First Amendment in particular: to protect unpopular
> individuals from retaliation—and their ideas from suppression—at the hand of an intoler-
> ant society.

*McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995). The anonymous online petitioner,

blogger, and commenter is the modern version of the anonymous pamphleteer. SORA deprives

Plaintiff of his constitutional right to engage in such protected speech.

### J.  Voting

49. SORA burdens Plaintiff's ability to vote in person at his designated precinct because it

is located at a school, where he cannot be certain children are not present. *See* Tenn. Code Ann.

§ 40-39-211(d)(1)(A) (West 2022). To avoid violating SORA, Plaintiff must vote by absentee bal-

lot or at an early voting precinct not located in a prohibited area.

### K.  Religious Practice

50. SORA burdens Plaintiff's ability to practice religion. Plaintiff is a practicing Christian

but cannot attend any church whose grounds include a school, licensed day care center, other child-

care facility, playground, or recreation center if minors are present. *See* Tenn. Code Ann. § 40-39-

211(d)(1)(A) (West 2022). This limits his options for attending church because many churches

have such facilities.

### L.  Access to Public Libraries

51. SORA burdens Plaintiff's access to public libraries. SORA authorizes public library

boards and library administrators "to reasonably restrict the access of any person listed on the

sexual offender registry," including "imposing a total ban of the offender's access to a public library," so long as the library "consider[s]" certain statutory factors. Tenn. Code Ann. § 40-39-216(a) & (c) (West 2022).

52. Plaintiff is an amateur historian and genealogist and regularly visited his local public library to pursue that interest until the library exercised its authority under SORA to bar him from the library.

53. Plaintiff planned to visit a public library in another city but discovered it also barred sex offenders and enforced it by checking patrons' drive licenses for the statutorily required sex offender code. *See* Tenn. Code Ann.§ 40-39-213(a) & § 55-50-353(a).

### M. Recreation

54. SORA burdens Plaintiff's ability to engage in recreation.

55. Plaintiff cannot go to public parks, recreation centers, or public athletic fields if he has reason to believe children under eighteen (18) years of age are present." Tenn. Code Ann. § 40-39-211(d)(1)(A) (West 2022). Plaintiff is an avid outdoorsman and regularly engages in outdoor activities at state parks. He is constantly afraid he is in violation of SORA, because he cannot be certain children are not present somewhere in the park. For many years, he attended large public events at a state park, but he stopped because he realized that children sometimes attended these events. Plaintiff is a fan of his local high school's football team but cannot attend games because they are held on school grounds. *See id.*

56. Plaintiff completed the necessary training to become a state certified naturalist so that he could perform naturalist education outreach and volunteer service. He can perform little, if any such outreach, however, because such activities typically occur in parks or at school where children are present. *See id.*

## *N. False Information & Stigmatization*

57. The sex offender registry stigmatizes Plaintiff and exposes Plaintiff to public hostility by publicly and falsely labeling him as "violent" based solely on the statutory classification of his offense as a "violent sex offense."

58. The sex offender registry also stigmatizes Plaintiff and exposes Plaintiff to public hostility by publicly and falsely labeling him as an "offender against children" and as "violent against children," which falsely implies he has committed sex offenses against multiple children.

59. The public registry website not only generates hostility toward Plaintiff, it enables anyone hostile toward Plaintiff because of his registry status to find him by posting extensive personal information about Plaintiff, including his residential address, employer address, date of birth, school information, vehicle information, physical description, and photograph. Tenn. Code Ann. § 40-39-206(d) (West 2022). As a result, Plaintiff is exposed to a substantial risk of ostracism, harassment, and violence.

60. Sometime before 2012, certain websites began republishing and embellishing information from state sex offender registries. These websites used search engine optimization to ensure registrants' information appeared among the top results when their names were searched online. Beginning in 2012, the website operators offered to take down the information in exchange for money. Plaintiff and others filed a lawsuit against the website operators. One of the defendants learned Plaintiff's true name and contact information and emailed him seeking to settle. Plaintiff stopped responding to these emails when the defendant would not provide assurances he would remove Plaintiff's information from the websites. Shortly after Plaintiff stopped responding to the defendant's emails, two odd things happened. First, local police came to Plaintiff's apartment seeking to "verify" Plaintiff's sex offender registry information. Local police had never done this

before. Second, a private investigator came to Plaintiff's neighborhood and distributed Plaintiff's registration information from the sex offender registry to Plaintiff's neighbors and told them Plaintiff was a violent sex offender whom they should fear. Plaintiff returned home to find his neighbors and landlord extremely upset. On information and belief, the defendant in the lawsuit contacted local police and hired a private investigator to use his status as a registered sex offender to retaliate against Plaintiff.

### O. SORA Compared to Probation

61. SORA's reporting, surveillance, and supervision requirements are similar to, but more restrictive and onerous than, the reporting, surveillance, and supervision that Plaintiff experienced while serving his sentence on probation.

62. Plaintiff was required to report to his probation officer only periodically for a fixed term. Under SORA, Plaintiff must report quarterly, and every time he leaves or returns to the country, and on numerous other occasions, for the rest of his life. While on probation, Plaintiff reported briefly at scheduled times and could even report some matters to his probation officer by telephone. As Plaintiff progressed through probation, the probation officer required increasingly less reporting. Under SORA, Plaintiff must report in person. He must go and spend more than an hour waiting in line at his local law enforcement agency's sex offender registry office.

63. If Plaintiff had been accused of violating his probation terms, the maximum sanction would have been to serve his sentence. Under SORA, Plaintiff faces arrest and prosecution on a felony charge for each alleged violation of the law.

64. The fundamental difference between the reporting, surveillance, and supervision requirements of probation and those of SORA is that probation is based on the premise that convicted persons like Plaintiff can be rehabilitated and prepared to be productive members of society once

they have served their sentence, while the premise of SORA is that Plaintiff is and will always be a menace to society, regardless how many years Plaintiff lives peaceably, productively, and without criminal conduct.

65. Under SORA, Plaintiff must report significantly more information than what he was required to report while he was serving his sentence on probation.

66. SORA's requirement that minor changes be reported in person within 48-hours is a level of reporting that far exceeds what Plaintiff experienced while he was serving his sentence on probation.

67. As a result of SORA's immediate reporting requirements, coupled with the quarterly reporting requirements, Plaintiff must, for the rest of his life, report in person to law enforcement with a frequency that is greater than his reporting obligations when he was on probation.

68. For Plaintiff, the lifetime surveillance imposed by these reporting requirements is not only intrusive, but also burdensome. Plaintiff must report in person. Plaintiff cannot even pay his annual registration fee without appearing in person because the law arbitrarily commands it.

## P. *Vagueness, Strict Liability, and Impossibility of Compliance*

69. The restrictions and obligations of SORA are so vague that Plaintiff is unable to know whether or not he is in violation of the law and are so extensive and pervasive that Plaintiff is literally unable to comply with the law.

70. SORA's requirements for reporting personal information are so vague that Plaintiff does not understand what information must be reported or what changes in information subject him to the in-person, 48-hours reporting requirement.

71. For example, SORA requires Plaintiff to report a "material change in employment or vocation status" within 48-hours and defines a "material change in employment or vocation status"

to include "substantially changing the offender's hours of work at the same employment or voca-tion" or "any other change in the offender's employment or vocation that differs from that which the offender originally registered" if the change remains in effect for five consecutive days or more. Tenn. Code Ann. § 40-39-203(a)(6) (West 2022). If Plaintiff takes a vacation of more than five days and does no work, he does not know whether he must report that period.

72. SORA also requires Plaintiff to report any change to any information on his registration within 48-hours. Tenn. Code Ann. § 40-39-203(a)(4) (West 2022). The information on his regis-tration includes "any vehicle used or owned by an offender" and a "current photograph" of that vehicle. *Id*. § 40-39-203(i)(10) & (19). If Plaintiff borrows a car even once, Plaintiff does not know whether he must report that use. If Plaintiff's car breaks down so that he cannot use it, Plaintiff does not know if he has to report that he is no longer using the car. If Plaintiff gets in a wreck and the car sustains visible damage, Plaintiff does not know whether he must report and provide an updated photograph of the car. If Plaintiff has to use a rental car while his car is in the shop, Plaintiff does not know whether he must report that and then report again when he returns the rental car to the rental company.

73. SORA prohibits Plaintiff from residing or working within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public, and prohibits Plaintiff from standing, sitting "idly," or remaining within that same distance of those locations if Plaintiff "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." Tenn. Code Ann. § 40-39-211(a) & (d) (West 2022). Plaintiff often cannot know if he is standing or sitting "idly" within 1,000 feet of one of these prohibited

areas because the property boundaries are unknown and the distances are impossible to measure without sophisticated equipment.

74. Plaintiff also cannot know whether a law enforcement officer will deem him to have a "legitimate reason for being there" and is therefore subject to arbitrary arrest.

75. Plaintiff must obtain and maintain a valid driver's license or photo identification that has a code identifying him as a sex offender and must "always have the license or identification card" in his possession. Tenn. Code Ann. § 40-39-213(a) & § 55-50-353(a) (West 2022). The law does not define "possession." Thus, it is unclear whether Plaintiff is in violation of the law in situations where he cannot have his identification on his person, for example, while swimming, sleeping, or exercising.

76. Plaintiff is concerned that he will inadvertently violate SORA's requirements because he does not understand what they are.

77. SORA imposes criminal liability despite the impossibility of compliance. SORA imposes liability regardless of whether illness, injury, or practical difficulties make compliance impossible.

78. Plaintiff fears that, despite his best efforts to understand and comply with the law, and despite the absence of any intention to violate the law, he will be held criminally liable for any failure to comply. He knows that he can be punished with prison even if he does not know a particular act or omission is illegal, because SORA imposes criminal liability solely on the basis that the defendant "knowingly" commits various innocent acts.

79. Any violation of SORA's requirements is a Class E felony, Tenn. Code Ann. § 40-39-208(b) (West 2022), which carries a minimum sentence of one year and a maximum sentence of six years, *id.* § 40-35-111(a)(5). People convicted of violating SORA's requirements, however, are

subject to mandatory minimum sentences and fines of ninety days and $350 for the first offense, 180 days and $600 for the second offense, and one year and $1,100 for the third or subsequent offense. *Id.* § 40-39-208(b)–(e).

### Q. Consequences beyond SORA

80. Because Plaintiff must register as a sex offender under SORA, he is also subject to a vast and labyrinthine array of laws and ordinances imposed on registered sex offenders by the federal government, other state or tribal governments, and municipalities.

81. Because registration in one state generally triggers registration in another state, the fact that Plaintiff is subject to SORA means he is also subject to the sex offender registration laws of other jurisdictions if he travels or moves.

### R. Irreparable Harm

82. Plaintiff has and continues to suffer irreparable harm from SORA's enforcement against him and has no other adequate legal remedy for that harm.

### CLAIM FOR RELIEF

### COUNT 1

### Violation of Ex Post Facto Clause as Applied to Pre-SORA Offenses

83. Plaintiff incorporates the preceding paragraphs by reference.

84. SORA applies to criminal offenses that occurred before SORA's effective date.

85. Individually and in combination, SORA's provisions are punitive in effect on their face.

86. SORA therefore violates the Ex Post Facto Clause and is unconstitutional as applied based on criminal offenses that occurred before SORA's effective date.

87. Plaintiff is therefore entitled to a judgment: (a) declaring that (i) SORA violates the Ex Post Facto Clause as applied based on criminal offenses that occurred before SORA's effective

date and (ii) Plaintiff has no obligation to comply with SORA; (b) preliminarily and permanently enjoining Defendants, their officers, agents, employees, servants, and attorneys, and all persons in active concert or participation with them (i) from applying SORA based on criminal offenses that occurred before SORA's effective date, (ii) from enforcing SORA against Plaintiff, including the continued publication of Plaintiff's information on the sex offender registry ("SOR"), and (iii) to remove Plaintiff's information from the SOR; and (c) awarding Plaintiff's reasonable attorney fees.

## COUNT 2

### *Violation of Ex Post Facto Clause as Applied to Plaintiff*

88. Plaintiff incorporates the preceding paragraphs by reference.

89. SORA applies to criminal offenses that occurred before SORA's effective date.

90. Individually and in combination, SORA's provisions are punitive in effect on their face and/or as applied to Plaintiff.

91. SORA therefore violates the Ex Post Facto Clause and is unconstitutional as applied to Plaintiff.

92. Plaintiff is therefore entitled to a judgment: (a) declaring that (i) SORA violates the Ex Post Facto Clause as applied to Plaintiff and (ii) Plaintiff has no obligation to comply with SORA; (b) preliminarily and permanently enjoining Defendants, their officers, agents, employees, servants, and attorneys, and all persons in active concert or participation with them (i) from enforcing SORA against Plaintiff, including the continued publication of Plaintiff's information on the SOR, and (ii) to remove Plaintiff's information from the SOR; and (c) awarding Plaintiff's reasonable attorney fees.

## REQUEST FOR RELIEF

For these reasons, Plaintiff requests the Court to grant judgment against Defendants:

1. On Count 1, (a) declaring that (i) SORA violates the Ex Post Facto Clause as applied based on criminal offenses that occurred before SORA's effective date and (ii) Plaintiff has no obligation to comply with SORA; and (b) preliminarily and permanently enjoining Defendants, their officers, agents, employees, servants, and attorneys, and all persons in active concert or participation with them (i) from applying SORA based on criminal offenses that occurred before SORA's effective date, (ii) from enforcing SORA against Plaintiff, including the continued publication of Plaintiff's information on the SOR, and (iii) to remove Plaintiff's information from the SOR;

2. On Count 2, (a) declaring that (i) SORA violates the Ex Post Facto Clause as applied to Plaintiff and (ii) Plaintiff has no obligation to comply with SORA; (b) preliminarily and permanently enjoining Defendants, their officers, agents, employees, servants, and attorneys, and all persons in active concert or participation with them (i) from enforcing SORA against Plaintiff, including the continued publication of Plaintiff's information on the SOR, and (ii) to remove Plaintiff's information from the SOR;

3. Awarding Plaintiff's costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b) following entry of judgment and upon Plaintiffs' motion pursuant to Fed. R. Civ. P. 54(d)(2); and

4. Granting any other necessary or proper relief.

Dated: September 13, 2022.

Respectfully submitted:

/s/ W. Justin Adams
Edward M. Yarbrough (TN BPR # 004097)
Jonathan P. Farmer (TN BPR # 020749)
W. Justin Adams (TN BPR # 022433)
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, Tennessee 37219
Telephone: 615-238-6300
eyarbrough@spencerfane.com
jfarmer@spencerfane.com
wjadams@spencerfane.com

Plaintiff's Counsel