UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE #12, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-00712 |
| ) | Judge Aleta A. Trauger |
| WILLIAM LEE, in his capacity as ) | |
| Governor of the State of Tennessee, ) | |
| and DAVID RAUSCH, in his capacity as ) | |
| Director of the Tennessee Bureau of ) | |
| Investigation, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM & PRELIMINARY INJUNCTION

Plaintiff John Doe #12 has filed a Motion for Preliminary Injunction (Doc. No. 7), to which defendants Governor William Lee and Tennessee Bureau of Investigation Director David Rausch have filed a Response (Doc. No. 18), and Doe #12 has filed a Reply (Doc. No. 20). For the reasons set out herein, that motion will be granted.

Tennessee, like many states, maintains a registry of convicted sexual offenders and imposes a number of demanding, invasive, embarrassing, and expensive requirements on the individuals who have been placed on that registry. *See Reid v. Lee*, 476 F. Supp. 3d 684, 688–93 (M.D. Tenn. 2020) (listing requirements). Doe #12 was placed on the registry and made subject to those requirements, despite the fact that, when he allegedly committed the qualifying offense to which he entered an *Alford* plea[1]—a 1994 attempted aggravated sexual battery of a minor—

---

[1] "[S]uch a plea is not an admission of involvement in criminal behavior," but rather "a guilty plea that results from the defendant's recognition that 'the record before the judge contains strong evidence of

the registration scheme did not yet exist. Under the law of the Sixth Circuit, that policy is illegal. Specifically, the Sixth Circuit's published and binding opinion in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), held that Michigan's highly similar scheme, when applied to individuals whose crimes preceded the scheme's adoption, violated the constitutional prohibition on *ex post facto* criminal punishments. *See* U.S. Const., art I, §§ 9, cl.3, 10, cl. 1. Nothing about the Sixth Circuit's opinion in *Snyder* suggested that states other than Michigan can be assumed to have any greater right to pursue such a policy retroactively than Michigan did.

Although *Snyder* did not directly involve the State of Tennessee, the federal district courts of this state have repeatedly, if not quite unanimously, concluded that the same analysis applies (or, as the procedural posture in each given case called for, *likely*[2] or *plausibly*[3] applies) to Tennessee's own, very similar scheme and policies. *See, e.g.*, *Doe #11 v. Lee*, No. 3:22-CV-00338, 2022 WL 2181800, at *25 (M.D. Tenn. June 16, 2022) (Richardson, J.); *Doe v. Lee*, No. 3:21-CV-010, 2022 WL 452454, at *4 (E.D. Tenn. Feb. 14, 2022) (Jordan, J.); *Reid*, 476 F.Supp.3d at 708 (Trauger, J.); *Doe v. Rausch*, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (Reeves, C.J.); *Doe v. Rausch*, 382 F. Supp. 3d 783, 799–800 (E.D. Tenn. 2019) (Phillips, J.). *But see Mangum v. Lee*, No. 21-2637-SHM-TMP, 2022 WL 2833989, at *5 (W.D. Tenn. July 20, 2022) (Mays, S.J.) (holding, with limited discussion of *Snyder*, that Tennessee's scheme can be applied retroactively without violating the Ex Post Facto Clause); *State v. Atwell*, No. E2021-00067-CCA-R3-CD, 2022 WL 601126, at *7 (Tenn. Crim. App. Mar. 1, 2022) (holding that registry did not violate Ex Post Facto Clause "as applied to [the defendant's] particular

---

actual guilt . . . .'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 406 (6th Cir. 2019) (quoting *North Carolina v. Alford*, 400 U.S. 25, 37, 38 n.10 (1970)).

[2] *See* Fed. R. Civ. P. 65.

[3] *See* Fed. R. Civ. P. 12(b)(6).

circumstances"). The question of whether Tennessee's *ex post facto* application of its sexual offender requirements to individuals like these is illegal under *Snyder* may not be entirely beyond debate, but the issue has been addressed so clearly and so many times that the court assumes that all of the attorneys and government officials involved understand the basic jurisprudential lay of the land.

The courts that have applied *Snyder* in individual Tennessee cases have frequently granted injunctive relief to the plaintiffs in those cases that allowed those plaintiffs to be spared from the registry's requirements. Nevertheless, Tennessee officials have continued to impose the state's repeatedly-held-to-be-unlawful policy on other, similarly situated individuals who have not (yet) sought and received such judicial relief. State officials, of course, are under no formal legal obligation to agree with the Sixth Circuit or to act consistently with that court's rulings when not specifically ordered to do so—even if there are, as many would argue, strong prudential considerations supporting such deference. This court, however, *is* bound to honor the precedents of the duly empowered federal appellate court with jurisdiction over this district, and the court continues to find the grounds for distinguishing Tennessee's scheme from Michigan's to be unpersuasive, at best, for reasons that this court and others have already set forth at length. Rather than reiterating every detail of the same analysis over and over, the court will merely refer to the numerous earlier opinions for the premise that the state's policy of imposing *ex post facto* criminal punishments on some sexual offenders is unconstitutional under the currently applicable caselaw. Doe #12 seeks injunctive relief enforcing that principle in his favor.

"Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest."

*D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948 (3d ed. & Supp. 2019)). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). For reasons that the court has already discussed, that factor strongly favors the plaintiff.

The district court must "weigh the strength of the four [preliminary injunction] factors against one another," with the qualification that irreparable harm is an "indispensable" requirement, without which there is "no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T.*, 942 F.3d at 327 (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). The Sixth Circuit, however, has suggested that, "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). At the very least, "irreparable injury is presumed." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 649 (6th Cir. 2015) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). This factor therefore also favors granting a preliminary injunction

The third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The defendants argue that these factors favor denying Doe #12 a preliminary injunction, in light of the state's interest in protecting the safety of the public and preventing future sexual offenses. That interest, generally speaking, is a strong one. Its link to whether or not to grant Doe #12 a preliminary injunction, however, is weak. Indeed, the defendants have not produced any individualized evidence whatsoever regarding Doe #12's

current propensity to commit any offense. Doe #12, on the other hand, has attested that he has spent the last twenty-five years since he was released from prison in 1998 "without incident," having "made sincere and substantial efforts to rehabilitate [him]self and reintegrate into the community." (Doc. No. 7-1 ¶¶ 5, 27.) He built a life and career, and then, when legislative changes made his registration status public, he lost that career and had to rebuild his life again, finally becoming able to subsist on disability benefits, including those related to his veteran status. (*Id.* ¶¶ 13–16.) Throughout that period, he was under constant scrutiny due to his registry status, and, still, the defendants are unable to produce a single piece of information suggesting that he even so much as came close to sexually endangering another person over the course of the preceding two and one-half decades.

Doe #12's argument regarding the public interest is far less speculative than the defendants'. It is well-established that "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004). Under the Constitution, a backward-looking sexual offender registry—although perhaps permissible on its own, *see Smith v. Doe*, 538 U.S. 84, 105–06 (2003)—is not a license to heap an endless parade of new and severe punishments on individuals whose long-ago offenses carried no such consequences when committed. The framers of the Constitution chose to make that practice illegal, and the people of this country have not repealed that prohibition by constitutional amendment. Accordingly, the third and fourth factors, like the first and second, favor granting preliminary relief.

For the foregoing reasons, Doe #12's Motion for Preliminary Injunction (Doc. No. 7) is hereby **GRANTED**. It is hereby **ORDERED** that the defendants shall not enforce any provision of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and

Monitoring Act, Tenn. Code Ann. § 40-39-201 *et seq.*, against Doe #12 or require that plaintiff to comply with any portion of the Act. Each defendant shall, to the extent within his power, take such steps as are necessary to ensure that Doe #12 is removed from Tennessee's sexual offender registry and is not treated by any government entity within the defendants' supervision, control, or influence as subject to the Act. In light of the routine nature of removals and additions to the sexual offender registry, the court finds that no cash surety is necessary "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" by this injunction. Fed. R. Civ. P. 65(c).

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge